**PERKIN & FARIA**
JOHN F. PERKIN          1673
BRANDEE J.K. FARIA      6970
MICHELLE PREMEAUX       9580
700 Bishop Street, Suite 1111
Honolulu, Hawaii  96813
Telephone : (808) 523-2300

**BICKERTON LEE DANG & SULLIVAN**
JAMES J. BICKERTON          3085
Bickerton Lee Dang & Sullivan
745 Fort Street, Suite 801
Honolulu, Hawaii  96813
Telephone: (808) 599-3811

**TYCKO & ZAVAREEI LLP**
HASSAN A. ZAVAREEI, *Pro Hac Vice Forthcoming*
JEFFREY D. KALIEL, *Pro Hac Vice Forthcoming*
2000 L Street, N.W., Suite 808
Washington, D.C. 20036
Telephone: (202) 973-0900

Attorneys for Plaintiff  KATHLEEN SOULE,
individually and on behalf  of all others similarly situated.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KATHLEEN SOULE, individually and on behalf of all others similarly situated, | ) ) ) | **Civ. No. 14-00462 SOM-BMK** (Class Action) |
| | ) | |
| | ) | **FIRST AMENDED COMPLAINT;** |
| Plaintiffs, | ) | **EXHIBIT "A" – "B"** |
| vs. | ) | |
| | ) | |
| THE PRICELINE GROUP INC., | ) | |
| MARRIOTT INTERNATIONAL, | ) | |
| INC., and DOE DEFENDANTS 1-50, | ) | |
| | ) | |
| Defendants. | ) | |

1

## CLASS ACTION COMPLAINT

Plaintiff KATHLEEN SOULE, individually and on behalf of all persons similarly situated, for complaint against Defendants THE PRICELINE GROUP INC., MARRIOTT INTERNATIONAL, INC., and DOE DEFENDANTS 1-50, alleges as follows:

## INTRODUCTION

1.      This is a civil action seeking monetary damages, restitution and declaratory relief from Defendants, The Priceline Group Inc. ("Priceline"), Marriott International, Inc. ("Marriott"), and Doe Defendants 1-50, arising from the unfair and unconscionable assessment and collection of "resort fees."

2.      In today's era of ubiquitous Internet-based hotel booking, which allows for immediate price comparisons between dozens of hotels in a given locale, hotels like Marriott and third-party booking websites like Priceline compete for customers by purportedly offering the lowest room rates online.

3.      However, Defendants misrepresent the price that consumers could expect to pay for their hotel rooms by omitting "resort fees"—mandatory charges supposedly assessed for the use of a hotel's features—from room quotes.

4.      During the booking process for certain hotel rooms on Priceline.com, including for Marriott hotel rooms, Defendants omitted resort fees from quoted

2

prices for certain hotels, in an effort to make certain hotels appear less expensive than they actually were.  Consumers making internet bookings for hotel rooms on Priceline.com were thus deceived into choosing hotel rooms, the true, total price of which was never revealed prior to booking.

5.      In fact, for certain bookings on Priceline.com, Defendants Priceline never adequately informed consumers of the mandatory nature of resort fees, and never informed consumers of the amount of those resort fees prior to booking— despite the fact that Priceline had full knowledge of the amount of resort fees consumers will be required to pay.

6.      During the class period, Defendants misrepresented the room rates at certain hotels because they omitted *mandatory* "resort fees" of $30 or more per night at these hotels.  Because the "resort fees" are mandatory, there was no reason to omit them from the base room rate, other than to deceive consumers. Just as a hotel could not tout a low room rate, then charge extra for use of the shower after the guest arrived, it cannot exclude a mandatory "resort" fee from the room rate.

7.      If a consumer has to pay this charge for the use of a room, it is not a separate "fee" at all, but part of the room rate.  It should be disclosed as such.  In fact, Defendants charged the resort fees whether or not a hotel guest requested or actually used any of the supposed amenities covered by the "resort fee."  Unlike the infamous airline checked-baggage fees, in which a consumer is at least paying

for a service that she intends to use, Defendants charge resort fees even if a consumer has no wish to use or intention of using the services it purportedly covers.

8.    Resort fees can add a full 30 percent onto a hotel bill.  Bjorn Hanson, dean of the Tisch Center for Hospitality, Tourism, and Sports Management at New York University, estimates that hotels took in approximately $1 billion in resort fees in 2012 alone.

9.    It is for these reasons that in November, 2012, the Federal Trade Commission ("FTC") urged providers to include mandatory "fees" like "resort fees" in the total quoted room price.

10.    The FTC found that "consumers complained that they did not know that they would be required to pay resort fees in addition to the quoted hotel room rate. Several stated that they only learned of the fees after they arrived at the hotel, long after making a reservation at what they believed to be the total room price. Others paid for the reservation in advance, and only found out after they arrived at the hotel that they would have to pay additional mandatory fees."

11.    During the class period, Defendants made matters worse by never adequately informing consumers of the resort charges or the amount of the resort charges—and their mandatory nature—until they arrived at the hotel or checked out of the hotel.

12.     Noting the problems with this type of room rate misrepresentation, the FTC stated, "the 'total price' or 'estimated price' quoted to consumers includes only the room rate and applicable taxes. At some of these sites, the applicable resort fee is listed nearby, but separate from, the quoted price. In others, the quoted price is accompanied by an asterisk that leads consumers to another location at the site – sometimes on the same page, sometimes not – where the applicable resort fee is disclosed, typically in fine print . . . . These practices may violate the law by misrepresenting the price consumers can expect to pay for their hotel rooms. ***We believe that online hotel reservation sites should include in the quoted total price any unavoidable and mandatory fees, such as resort fees, that consumers will be charged to stay at the hotel***. While a hotel reservation site may breakdown the components of the reservation estimate (e.g., room rate, estimated taxes, and any mandatory, unavoidable fees), the most prominent figure for consumers should be the total inclusive estimate." (emphasis added)

13.     During the class period, Defendants violated this guidance for certain bookings on Priceline.com, including for Marriott hotel bookings.  Specifically, Defendants never adequately informed consumers of the mandatory nature of resort fees on certain bookings, and never informed consumers of the amount of those resort fees prior to booking—despite the fact that Priceline had full knowledge of the amount of resort fees consumers will be required to pay.

5

14.     The use of deceptive pricing practices like resort fees harm consumers and harm competitors, and harm Hawaii's important tourism industry.

## JURISDICTION AND VENUE

15.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the members of the putative Class exceed $5 million, exclusive of costs, and at least one of the members of the proposed Class is a citizen of a different state than Defendants.

16.     Venue properly lies in this district pursuant to 28 U.S.C. § 1391 and HRS § 603-36(5), because Defendants do business in this district and have imposed substantial resort fees on consumers in this district.

## THE PARTIES

17.     Plaintiff, Kathleen Soule, is a resident of Kahalui, Maui, Hawaii.

18.     Marriott is a for-profit corporation, incorporated in Texas, which maintains its principal place of business and worldwide headquarters in Bethesda, Maryland.  Marriott claims to have more than 3,900 properties around the world.

19.     Priceline is a company that operates a commercial travel website known as Priceline.com, as well as four other primary brands.  It is headquartered in Norwalk, Connecticut.

## CLASS ALLEGATIONS

20.    Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Fed. R. Civ. P. 23.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

21.    The proposed Classes are defined as:

All natural persons, wherever residing, who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, were a) charged one or more resort fees at a Hawai'i hotel after having made a booking for a hotel stay on Priceline.com; and b) were not provided a total price that included resort fees (the "Priceline.com Class").

All natural persons, wherever residing, who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, were a) charged one or more resort fees at a Hawai'i hotel after having made a booking for a Marriott hotel stay on Priceline.com; and b) were not provided a total price that included resort fees (the "Marriott Subclass").

All natural persons resident in Hawai'i, who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, were a) charged one or more resort fees at a hotel anywhere in the world after having made a booking for a hotel stay on Priceline.com; and b) were not provided a total price that included resort fees (the "Priceline.com Hawai'i Subclass").

All natural persons resident in Hawai'i, who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, were a) charged one or more resort fees at a hotel anywhere in the world after having made a booking for a Marriott hotel stay on Priceline.com; and b) were not provided a total price that included resort fees (the "Marriott Hawai'i Subclass").

The Class and Subclasses are referred to collectively as the "Classes."

22.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

23.     Excluded from the Classes are Defendants, its parents, subsidiaries, affiliates, officers and directors, any entity in which Defendants have a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

24.     The members of the Classes are so numerous that joinder is impractical.  The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by accessing Defendants' records.  A database of Defendants' customers is maintained by Defendants and includes customer names, contact information, date of stay, and charges paid. Thus, records are readily available for purposes of identifying all members of the Classes and providing notice of the instant class action to all Class members and determining the nature and size of each member's claim.

25.     The claims of the representative Plaintiff are typical of the claims of the Classes in that the representative Plaintiff, like all Class members, was charged resort fees by Defendants after having booked a hotel stay on Marriott.com or Priceline.com.  The representative Plaintiff, like all putative Class members, has

been damaged by Defendants' misconduct in that she has been assessed and/or will continue to be assessed unfair and unconscionable resort fees.  Furthermore, the factual basis of Defendants' misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

26.     There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single action simultaneously, efficiently, and without duplication of the expenses that numerous individual actions would entail.  No difficulties are likely to arise in the management of this class action that will preclude its purpose as a class action, and no superior alternatives exist for the fair and efficient adjunction of this controversy.  Without a class action, Defendants will likely retain the benefit of their wrongdoing and may continue the course of their actions, which could result in further damages.

27.     Among the questions of law and fact common to the Classes are whether Defendants:

a.     Understated the true booking totals and room rates at certain

hotels in order to deceive consumers into booking rooms at

those hotels;

b.     Misrepresented resort fees and their mandatory nature;

c.     Failed to present the amount of mandatory resort fees;

d.     Did not obtain affirmative consent from their customers prior to

charging resort fees;

e.     Do not alert their customers that a hotel booking would

necessarily trigger the charging of a resort fee prior to booking;

f.     Are unjustly enriched through its resort fee policies and

practices; and

g.     Violate the consumer protection acts of certain states through

their resort fee policies and practices.

28.    Other questions of law and fact common to the Classes include:

a.     The proper method or methods by which to measure damages,

and

b.     The declaratory relief to which the Classes are entitled.

29.    Plaintiff's claims are typical of the claims of other Class members, in

that they arise out of the same wrongful resort fee policies and practices employed

by Defendants.  Plaintiff has suffered the harm alleged and has no interests

antagonistic to the interests of any other Class member.

30.    Plaintiff is committed to the vigorous prosecution of this action and

has retained competent counsel experienced in the prosecution of consumer class

actions.  Accordingly, Plaintiff is an adequate representative and will fairly and

adequately protect the interests of the Classes.

31.    A class action is superior to other available methods for the fair and

efficient adjudication of this controversy.  Since the amount of each individual

Class member's claim is small relative to the complexity of the litigation, and due

to the financial resources of Defendants, no Class member could afford to seek

legal redress individually for the claims alleged herein.  Therefore, absent a class

action, the Class members will continue to suffer losses and Defendants'

misconduct will proceed without remedy.

32.    Even if Class members themselves could afford such individual

litigation, the court system could not.  Given the complex legal and factual issues

involved, individualized litigation would significantly increase the delay and

expense to all parties and to the Court.  Individualized litigation would also create

the potential for inconsistent or contradictory rulings.  By contrast, a class action

presents far fewer management difficulties, allows claims to be heard which might

otherwise go unheard because of the relative expense of bringing individual

11

lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## COMMON FACTUAL ALLEGATIONS

### A.   Marriott

33.    According to its website, Marriott owns and operates 3,900 hotels around the world.

34.    It operates sixteen hotels in the state of Hawaii: the Waikiki Beach Marriott Resort & Spa, the Courtyard Waikiki Beach, the Courtyard Maui Kahului Airport, the Courtyard King Kamehameha's Kona Beach Hotel, the Courtyard Kaua'i at Coconut Beach, the Ritz-Carlton, Kapalua, the JW Marriott Ihilani Ko Olina Resort & Spa, Marriott's Ko Olina Beach Club, Marriott's Waiohai Beach Club, Marriott's Maui Ocean Club – Lahaina & Napili Towers, Marriott's Maui Ocean Club – Molokai, Maui & Lanai Towers, the Kaua'i Marriott Resort, Marriot's Kaua'I Beach Club, Marriott's Kauai Lagoons – Kalanipu'u, the Waikoloa Beach Marriott Resort & Spa, and the Wailea Beach Marriott Resort & Spa.

35.    At certain of its hotels, Marriott charges a mandatory "resort fee" in addition to the disclosed room rate.

36.     Marriott charges or charged a resort fee at several of its properties nationwide, especially for hotel properties located in known "vacation" areas such as Hawaii, Arizona, Florida, and Las Vegas, Nevada.

37.     Marriott purports to charge this fee for "amenities" that are offered for free at some or all of Marriott's other locations.

38.     Marriott is aware that Priceline does not adequately inform consumers of mandatory resort fees, or the amount of mandatory resort fees, at Marriott properties when consumers book certain stays at Marriott properties on Priceline.com.

**B.     Priceline**

39.     Priceline.com is a website, operated by Priceline, that claims to offer discount rates for travel purchases such as airline tickets and hotel stays.

40.     Priceline has approximately 9,500 employees and earned revenues of $6.79 billion in 2013.

41.     Priceline does not supply travel services directly; instead, the company acts as a broker or agent for hotels, airlines, and other direct travel services providers, such as Marriott.

42.     Priceline knows (a) that consumers booking hotel rooms at certain hotels offered on Priceline.com will be charged a mandatory resort fee; and (b) the precise amount of that resort fee.

43.     Indeed, Marriott and other hotels provide Priceline with the amount of mandatory resort charges associated with any given hotel stay, prior to consumer reservations.

44.     Yet, during the class period, on certain bookings Priceline provided to consumers a "Total Room Cost" that omitted mandatory resort fees, despite its exclusive and superior knowledge of the base room rate and mandatory resort fees.

45.     Priceline's "total" cost was not actually "total."

46.     With respect to Plaintiff and members of the Classes, Priceline knew or had reason to know that they would have to pay additional mandatory costs in order to stay at the booked hotels.  Moreover, Priceline knew or had reason to know of the precise amounts in additional mandatory resort fees associated with the booked hotels.

47.     Despite having this knowledge, Defendants omitted information relating to additional mandatory resort fees and intentionally provided an inaccurate price to lure reasonable customers with favorable but inaccurate terms.

48.     Priceline has both the knowledge and technical capacity to provide the true amount of resort fees—and thus the true mandatory "total" for hotel room stays—at the time of booking.  Indeed, on certain Priceline.com bookings, the

14

company does this very thing, providing a true "Total Cost" that includes

mandatory resort fees:



49.     Plaintiffs and members of the Classes were not provided such

disclosures during the class period.

### C.     Resort Fees Charged on Priceline.com Bookings

50.     Plaintiff and all members of the Classes booked a hotel reservation

through Priceline.com, and were charged a resort fee.

51.     Upon information and belief, Priceline.com used a uniform system,

including uniform disclosures and procedures, for hotel reservations at on

Priceline.com.

52.     When consumers book hotels that charge mandatory resort fees,

Priceline does not adequately inform consumers of those resort fees or their

mandatory nature during this booking process—despite the fact that it is on specific notice from Marriott and other hotels that mandatory resort fees are associated with certain hotel stays.

53.    Indeed, during the booking process, Priceline states only that mandatory resort fees "may" be assessed.  The word "may" indicates Priceline is as-yet unaware whether a mandatory resort fee will be assessed or not.  But, as Plaintiff alleges, in reality Priceline knows that a resort fee would be assessed for a specific amount on particular bookings.

54.    It was deceptive for Priceline to state that additional mandatory fees "may" be charged, when it knew for a fact that resort fees *would* be charged.

55.    On August 9, 2011, Plaintiff Soule used Priceline.com to make a reservation for a stay at the Wailea Beach Marriott Resort & Spa for the night of August 12, 2011.

56.    Priceline provided Plaintiff a room rate of $110.00 per night—a rate that did not include the mandatory resort fee assessed for stays at the Wailea Beach Marriott.

57.    Prior to confirmation, Priceline quoted Plaintiff a "Total" of $133.49, which included the room rate of $110.00 plus "Taxes and Fees" of $23.49.  The "Total Room Cost" quoted by Priceline was not a true "total," as it did not include the mandatory resort fee assessed for stays at the Wailea Beach Marriott, despite

Priceline's knowledge that a mandatory resort fee of $30 would be assessed to

Plaintiff Soule by Marriott.

58.    Priceline's affirmative statement pertaining to the "Total" was false

or misleading to a reasonable person. Defendants omitted significant and

mandatory additional charges readily available and which it *knew* Plaintiff would

have to pay to stay at the Marriott hotel.

59.    At the time she checked out of the Wailea Beach Marriott, Plaintiff

was assessed an additional mandatory or non-optional "Resort Fee" of $30 over

and above the amount she had been quoted and billed as the total for her stay

during the booking process on Priceline.com.

60.    This mandatory resort fee added nearly 30% to the base room rate

quoted by Priceline at the time of booking.

61.    Priceline has therefore acted in a manner that was "unethical,

oppressive, unscrupulous" and/or offended established public policy or was

otherwise substantially injurious to consumers.  The conduct was thus therefore

"unfair" within the meaning of HRS Chapter 480.

62.    By virtue of the foregoing facts, the information and disclosures

provided to Plaintiff in the booking process and prior to confirmation were unfair

and deceptive within the meaning of HRS Section 480-2.

63.    After Plaintiff Soule made her booking, Priceline sent her a

confirmation via email.  *See* Exhibit A, attached hereto.

64.     The e-mailed, post-booking confirmation prominently noted a "Total Room Cost" of $133.49, which included the room rate of $110.00 plus "Taxes and Fees" of $23.49.  The "Total Room Cost" quoted by Priceline did not include the mandatory resort fee assessed for stays at the Wailea Beach Marriott.

65.      The booking confirmation did not inform Plaintiff Soule that the room rates and "Total Room Cost" provided were exclusive of certain mandatory charges like resort fees—indeed, it made no mention of mandatory resort fees at all.

66.     The booking confirmation provided Plaintiff Soule with the right to stay one night at the Wailea Beach Marriott for a total of $133.49.

67.     Marriott knew, or should have known, that Priceline does not inform consumers of mandatory resort fees at its properties, and knew, or should have known, that Plaintiff Soule specifically was not informed of the $30 resort fee at the Wailea Beach Marriott during the booking process or at the time of booking on Priceline.com.

68.     Yet Marriott assessed $30 more than the quoted "Total Room Cost" when it assessed Plaintiff a mandatory resort fee at the time of checkout.

69.     Marriott's unauthorized assessment of the resort fee was unfair and deceptive within the meaning of HRS Section 480-2.

70.    By the plain terms of the Priceline.com booking, Marriott had no right to charge mandatory resort fees on that booking.

71.    By recovering an additional, baseless fee in the form of the resort fee, Defendants are able to reduce its advertised room rates by the amount of the resort fee without any negative impact when price-conscious consumers compare rates across hotels.  In other words, Defendants have devised a mechanism through the use of resort fees whereby they advertise what appears to be a low room rate but then secretly recoup an additional charge.

72.    The scheme provides direct benefits to both Defendants.  It allows Priceline.com to increase the number of bookings made on its website, and allows Marriott to a) increase the number of guests at its properties, and b) extract more revenue from those guests.

**D.    The FTC Has Stated That Practices Like Defendants' Are Deceptive and Urged Providers to Display All Mandatory Charges in the Base Room Rate Disclosed to Consumers**

82.    In November, 2012, the FTC sent a letter to 22 hotel chain operators warning that online reservation sites may violate the law by providing a deceptively low estimate of what consumers can expect to pay for their hotel rooms.  A copy of the letter is attached as Exhibit B hereto.

83.    Marriott has publicly confirmed that it received the warning letter from the FTC. *See* Exhibit C. http://www.washingtonpost.com/lifestyle/travel/the-

navigator-hidden-hotel-fees/2012/12/06/75710898-3d9d-11e2-ae43-

cf491b837f7b_story.html

84.    According to the FTC letters, "One common complaint consumers

raised involved mandatory fees hotels charge for amenities such as newspapers,

use of onsite exercise or pool facilities, or internet access, sometimes referred to as

'resort fees.'  These mandatory fees can be as high as $30 per night, a sum that

could certainly affect consumer purchasing decisions."  The warning letters also

state that consumers often did not know they would be required to pay resort fees

in addition to the quoted hotel rate.

85.    The FTC stated, "the 'total price' or 'estimated price' quoted to

consumers includes only the room rate and applicable taxes. At some of these sites,

the applicable resort fee is listed nearby, but separate from, the quoted price. In

others, the quoted price is accompanied by an asterisk that leads consumers to

another location at the site – sometimes on the same page, sometimes not – where

the applicable resort fee is disclosed, typically in fine print."

86.    According to the FTC, "[t]hese practices may violate the law by

misrepresenting the price consumers can expect to pay for their hotel rooms. We

believe that online hotel reservation sites should include in the quoted total price

any unavoidable and mandatory fees, such as resort fees, that consumers will be

charged to stay at the hotel. While a hotel reservation site may breakdown the

components of the reservation estimate (*e.g.*, room rate, estimated taxes, and any mandatory, unavoidable fees), the most prominent figure for consumers should be the total inclusive estimate."

### E.   Defendants' Resort Fee Practices Harmed Plaintiff

87.    Defendants' wrongful resort fee policies and practices described above harmed Plaintiff and members of the Class.  The following allegations regarding the named Plaintiff are made for purposes of illustrating the harm and damage sustained by Plaintiff and members of the Class as a result of Defendants' wrongful resort fee policies and practices.

88.    On August 9, 2011, Plaintiff Soule used Priceline.com to make a reservation for a stay at the Wailea Beach Marriott Resort & Spa for the night of August 12, 2011.

89.    Priceline quoted Plaintiff a room rate of $110.00 per night—a rate that did not include the mandatory resort fee assessed for stays at the Wailea Beach Marriott.

90.    Prior to confirmation, Priceline quoted Plaintiff a "Total Room Cost" of $133.49, which included the room rate of $110.00 plus "Taxes and Fees" of $23.49.  The "Total Room Cost" quoted by Priceline did not include the mandatory resort fee assessed for stays at the Wailea Beach Marriott.

91.    However, at time she checked out of the hotel, Plaintiff was assessed

21

an additional mandatory or non-optional "Resort Fee" of $30 over and above the amount she had been quoted and billed as the total for her stay during the booking process.

90.     Based on information and belief, the resort fees assessed Plaintiff are indicative of resort fees charged to all Class members, and are representative of millions of dollars of resort fees that Defendants wrongfully assessed.

91.     As a consequence of Defendants' resort fee policies and practices, Plaintiff and the Class have been wrongfully forced to pay resort fees.  Defendants have improperly deprived Plaintiff and the Classes of significant funds, causing ascertainable monetary losses and damages.

92.     Defendants have wrongfully deprived Plaintiff and the Class of funds to which they had no legitimate claim.

93.     All conditions precedent to the relief sought herein have either occurred or have been performed or waived.

**FIRST CLAIM FOR RELIEF**
**Violations of H.R.S. Section 480-2**

**(Against Defendants, On Behalf of the Classes)**

**A.     Unfair and Deceptive Acts and Practices**

94.     Plaintiff repeats paragraphs 1 through 93 above.

95.     This claim is asserted on behalf of the members of the Classes pursuant to HRS § 480, *et seq.*

96.     Plaintiff is a consumer as defined by HRS § 480-1.

97.     HRS § 480-2(a), declares unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

98.     Defendants violated § 480-2(a), by the conduct alleged above including, but not limited to, understating true room rates and misrepresenting and concealing resort fees and their mandatory nature.

99.     Defendants' conduct of misrepresenting, concealing, suppressing, or otherwise omitting the foregoing created a likelihood of confusion or of misunderstanding.

100.   The acts and practices of Defendants described above were "unfair" and "deceptive" within the meaning of HRS Section 480-2.  Plaintiff and the members of the class have been harmed by the unfair and deceptive acts and practices alleged above because they had to pay resort fees in an unfair and deceptive transaction, a charge that should not have been charged and which should be declared void under Section 480-11.

### B.     Unfair Methods of Competition

101.   For the reasons described below, Defendants' conduct described herein also constituted "unfair methods of competition" within the meaning of Section 480-2 that caused harm to Plaintiff and the Class members.

### C.    Concealing True Room Rates Conferred Unfair Advantage

102.   Defendants gained an unfair advantage in competition with other hotels and resorts that (1) made fair and non-deceptive disclosures of their mandatory charges at time of booking and (2) thereby allowed consumers to fairly evaluate the true cost of the stay at those disclosing hotels and resorts.  The nature of the competition was the competition between hotels and resorts to attract customers by offering the lowest price for comparable facilities and services.

103.   By concealing the true room rate via the deceptive statements and omissions described above and the unfair practices of delaying disclosure of resort fees until after a hotel stay, Defendants attracted customers who otherwise may have stayed at the fairly disclosing hotels and resorts and also extracted additional monies from those customers.

104.   This increase in customers and revenue was at the direct expense of those hotels and resorts who dealt fairly and non-deceptively with consumers.  If Defendants had fairly disclosed its mandatory charges so that consumers could properly shop and compare with fairly disclosing hotels and resorts, Defendants would have been forced to set its prices closer to prevailing market prices and additional business would have flowed to the fairly disclosing hotels and resorts.

105.   By virtue of the foregoing, the conduct alleged herein constituted unfair methods of competition.

**D.     Unfair Competition By Using "Drip" or "Partitioned" Pricing**

106.   Academic research into pricing schemes such as Defendants' refer to the scheme as "partitioned pricing," in which a product or service's price is divided into a base price (charged for the product or service itself), and mandatory surcharges associated with that product or service.  Other commentators refer to such schemes as "drip pricing."

107.   There are several reasons "drip pricing" or "partitioned pricing" harms consumers and has a negative effect on free and fair competition and competitors who compete fairly.

108.    Framing prices via the use of "drip" pricing or "partitioned" pricing has a powerful ability to influence and mislead, leading consumers to spend more than they intend to, or purchase a product that does not meet their needs, or a product that leads to another market-inefficient outcome.  It also places honest competitors who do not engage in drip pricing or partitioned pricing at a significant disadvantage.

109.   Academic research has shown that consumers can be detrimentally influenced by the "base" price provided for a product or service, rather than ancillary fees that ultimately increase the total price.

110.   Such research has shown that consumers perceive that products with "partitioned" prices have lower total costs than products using an equivalent

25

combined price.  Lower price perceptions leads to higher demand for the "partitioned" price product or service—at an unfair advantage to honest sellers.

111.   Academic research has shown that when reasonable consumers form judgments or beliefs about prices, they often "anchor" on numeric information they see initially—and often fail to adjust sufficiently for additional information regarding surcharges.  In other words, it is known that because of human nature, reasonable consumers grab on to the "headline" price, then fail to adjust their perception of this price.

112.   "Partitioned" pricing or "drip" pricing unfairly exploits this reality, artificially creating perceptions of lower prices and taking advantage of consumers.

113.    If reasonable consumers shopping for a hotel initially see a low "partitioned" price that does not include certain mandatory charges, and form a belief that it is better than a competitor's rate, then even if the consumers see later surcharges that raise the total price much higher, they are likely to keep their original belief that the partitioning hotel's rates are comparatively better.

114.   Academic research has shown that "partitioned" or "drip" pricing is beneficial to sellers because disclosing total cost components separately positions their products or services more favorably when consumers comparison shop— especially when they shop online.

115.   Misleading pricing is not only bad for consumers, it is also bad for

competition, as it creates an uneven playing field between transparent, fair

businesses and those engaging in deceptive pricing practices.

116.   It is well known in the hotel and resort industry that consumers

usually decide where to stay based on the room price that is quoted to them

online.  Defendants therefore use partitioned pricing to attract more guests and

more sales, and to give it an unnatural and unfair advantage over competitors who

choose to price transparently.

117.   It is highly unusual for sellers in e-commerce in general, and in the

hotel industry specifically, to wholly omit a true total price through the purchase

process.  For example, while many online purchases (for example, from

Amazon.com and similar sites, or on car rental websites) feature partitioned

pricing, the standard practice is to provide—at least at some point during the

purchase process—a true total cost that includes all "partitioned" charges.

Defendants' failure to do this anywhere in the booking process or confirmation

process made its unfair partitioned pricing even more damaging to fair competitors

and consumers.

118.   Defendants' pricing scheme, if left unchecked, would encourage a

"race to the bottom" among hoteliers, who may be forced by Defendants to engage

in ever-more-deceptive pricing practices that tout very low "base" rates and

disguise or hide ever higher surcharges.

119.   By virtue of the foregoing, the "partitioned" or "drip" pricing conduct alleged herein constituted unfair methods of competition.

### E.   Unfair Methods of Competition Have Harmed the Class

120.   Plaintiff and the other members of the class have been harmed by these unfair methods of competition because they have had to pay higher prices to stay at hotels than they would have paid either (a) to stay at a Marriott in a transparent market where all transaction costs were fairly disclosed by Defendants and Defendants competed fairly on price or (b) to stay at another facility they could have chosen had they known the true price of the hotel stay booked on Priceline.

### F.   Damages

121.   As a result of the unfair and deceptive acts and practices and/or the unfair methods of competition alleged above, Plaintiff and the Class members have suffered injury in the amount of the "resort fees" they were unfairly and/or deceptively required to pay.

122.   As redress for Defendants' repeated and ongoing violations of HRS § 480-2(a), Plaintiff and the Class are entitled to, *inter alia*, damages, reasonable attorneys' fees and costs, and declaratory relief, pursuant to § 480-13.

### SECOND CLAIM FOR RELIEF
### Unjust Enrichment

### (Against Priceline, on Behalf of the Class)

28

123.   Plaintiff repeats Paragraphs 1 through 93 as if fully stated herein.

124.   The post-booking confirmation provided by Priceline to Plaintiff Soule granted Plaintiff Soule the right to stay one night at the Wailea Beach Marriott for a total of $133.49.

125.   Priceline was unjustly enriched when it failed to provide Plaintiff Soule the right to stay one night at the Wailea Beach Marriott for a total of $133.49.  Instead, Plaintiff Soule was required to pay an additional $30 to enjoy that previously promised hotel stay.

126.   Priceline knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Classes.  In so doing, Priceline acted with conscious disregard for the rights of Plaintiff and members of the Classes.

127.   As a result of Priceline's wrongful conduct as alleged herein, Priceline has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Classes.

128.   Priceline's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

129.   Under the common law doctrine of unjust enrichment, it is inequitable for Priceline to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of resort fees on Plaintiff and members of the Classes in an unfair, unconscionable, and oppressive manner.  Priceline's

retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

130.   The financial benefits derived by Priceline rightfully belong to Plaintiff and members of the Classes.  Priceline should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Classes all wrongful or inequitable proceeds received by it.  A constructive trust should be imposed upon all wrongful or inequitable sums received by Priceline traceable to Plaintiff and the members of the Classes.

131.   Plaintiff and members of the Classes have no adequate remedy at law.

## THIRD CLAIM FOR RELIEF
### Unjust Enrichment

### (Against Marriott, on Behalf of the Marriott Subclass)

132.   Plaintiff repeats paragraphs 1 through 93 above.

133.   The post-booking confirmation provided by Priceline to Plaintiff Soule granted Plaintiff Soule the right to stay one night at the Wailea Beach Marriott for a total of $133.49.

134.   Priceline was acting as an agent for Marriott at the time it made that promise to Plaintiff Soule.

135.   Marriott as unjustly enriched when it assessed $30 more than the quoted "Total Room Cost" in the form of a mandatory resort fee at the time of checkout.

136.   Marriott knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Classes.  In so doing, Marriott acted with conscious disregard for the rights of Plaintiff and members of the Classes.

137.   As a result of Marriott's wrongful conduct as alleged herein, Marriott has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Classes.

138.   Marriott's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

139.   Under the common law doctrine of unjust enrichment, it is inequitable for Marriott to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of resort fees on Plaintiff and members of the Classes in an unfair, unconscionable, and oppressive manner.  Marriott's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

140.   The financial benefits derived by Marriott rightfully belong to Plaintiff and members of the Classes.  Marriott should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Classes all wrongful

31

or inequitable proceeds received by it.  A constructive trust should be imposed upon all wrongful or inequitable sums received by Marriott traceable to Plaintiff and the members of the Classes.

141.   Plaintiff and members of the Classes have no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Classes demand a jury trial on all claims so triable and judgment as follows:

1.   Declaring Defendants' resort fee policies and practices to be wrongful, unfair and unconscionable;

2.   Restitution of all resort fees paid to Defendants by Plaintiff and the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

3.   Disgorgement of the ill-gotten gains derived by Defendants from its misconduct;

4.   Actual damages in an amount according to proof;

5.   Punitive and exemplary damages;

6.   Treble Damages Under Haw. Rev. Stat. § 480;

7.   Pre-judgment interest at the maximum rate permitted by applicable law;

8.      Costs and disbursements assessed by Plaintiff and the Classes in

connection with this action, including reasonable attorneys' fees and costs pursuant

to applicable law; and

9.      Such other relief as this Court deems just and proper.


Dated:  HONOLULU, HAWAII, November 3, 2014.


                                          /s/ James J. Bickerton
                                          JOHN FRANCIS PERKIN
                                          BRANDEE J.K. FARIA
                                          MICHELLE PREMEAUX
                                          JEFFREY KALIEL (*pro hac vice*)
                                          HASSAN ZAVAREI (*pro hac vice*)
                                          Attorneys for Plaintiff
                                          KATHLEEN SOULE,
                                          individually and on behalf
                                          of all others similarly situated

33